FILED
2011 Nov-04  PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| AMY NICOLE MOONEY, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 4:10-CV-2019-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

## MEMORANDUM OF OPINION

### I.    Introduction

The plaintiff, Amy Nicole Mooney, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Ms. Mooney timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Mooney was thirty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a ninth-grade education.  (Tr. at 113, 125.) Her past work experiences include employment as a cashier, nursing assistant,

sandwich maker, and two days as a flower deliverer.  (Tr. at 127.)  Ms. Mooney claimed that she became disabled on June 1, 2006 (amended from an original claim of November 1, 2001), due to obesity, chronic chest pain from ischemic heart disease and smoker's bronchitis, diffuse non-obstructive cardiac disease, chronic lower back pain, anxiety, and depression.  *(*Tr. at 24-26.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. § 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  20 C.F.R. § 416.920(b).  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. § 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id;* 20 C.F.R. §416.909.  The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c).  Otherwise, the analysis continues to step three, which is a determination of whether

the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. 20 C.F.R. § 416.920(d) If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Mooney has not been under a disability, as defined in the Social Security Act, since the date her application was filed. (Tr. at 33.) He further determined that Ms. Mooney has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at

26.)   According to the ALJ, Plaintiff's obesity, chronic chest pain due to the combination of ischemic heart disease and smoker's bronchitis, diffuse non-obstructive cardiac disease, chronic lower back pain, anxiety, and depression are considered "severe" based on the requirements set forth in the regulations.  (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. at 18.)  The ALJ determined that Plaintiff has the following residual functional capacity:

> lifting objects weighing up to 20 pounds; sitting as much as 6 out of 8 hours per day; standing and walking as much as 2 out of 8 hours per day; sitting or standing in the performance of job tasks; no working around unprotected heights; no exposure to the extremes of cold, heat, humidity, gasses, or pulmonary irritants; no frequent overhead reaching or lifting; and non-complex routine job tasks that do not require production quotas.

(Tr. at 29.)  According to the ALJ, Ms. Mooney is unable to perform any of her past relevant work, she is a "younger individual," she has a "limited education," and she is able to communicate in English, as those terms are defined by the regulations.  (Tr. at 32.)  He determined that "transferability of job skills is not material to the determination of disability" in this case.  (*Id.*)  The ALJ found that Ms. Mooney has the residual functional capacity to perform a significant number of jobs in the national economy.  (*Id.*)  Even though Plaintiff cannot perform the full range of light work, the

ALJ considered the plaintiff's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines and relied on the testimony of the vocational expert to determine that she is capable of performing jobs such as optical goods polisher, document preparer, and inspector of small parts. (Tr. at 33.) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, since June 1, 2006, the date the application was filed." (*Id.*)

II.     Standard of Review

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with

considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion

Ms. Mooney alleges that the ALJ's decision should be reversed and remanded for two related reasons.  First, she believes that the ALJ failed to properly credit her treating physician's opinion that she was disabled from a cardiac standpoint, for at least a threshold period of disability.  (Doc. 7 at 6-7.)  Second, Plaintiff contends that

the ALJ erred in according dispositive weight to the Medical Expert's opinion for the entire period at issue. (Tr. at 7-8.)

A.    Weight of the Treating Physician's Opinion

Plaintiff contends that the ALJ improperly evaluated her treating physician's opinion. (Doc. 7 at 6-7.)  A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.  *See* 20 C.F.R. § 416.927(d).  Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing*

*Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 416.927(e). Both the ALJ and this Court are interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the Social Security Administration that bears the responsibility for determining whether the claimant is disabled, not the claimant's doctor. *See, e.g.,* 20 C.F.R. § 416.927(e)(1).

In this case, the Plaintiff's primary impairment is cardiac in nature, and she contends that the ALJ should have given great weight to a particular opinion of Dr. Robert Brock, one of her treating cardiologists. (Doc 7 at 6-7.) Plaintiff was

hospitalized in May 2006 for chest pain, and received a stent in her right coronary artery. (Tr. at 227-28.) This procedure was performed by Dr. Dharam Paul, but Dr. Brock soon began seeing Ms. Mooney for follow-up visits. (Tr. at 228, 279-80.) On one of these visits, on April 10, 2007, Dr. Brock stated that in his opinion, "she is disabled from a cardiac standpoint." (Tr. at 334.) It is this opinion, of course, that Ms. Mooney believes the ALJ should have credited with great weight.

As the Commissioner points out, this is exactly the type of opinion reserved for his determination by 20 C.F.R. § 416.927(e)(1). The ALJ should not give "any special significance to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 416.927(e)(3). The Eleventh Circuit observed in *Lewis* that the ALJ should be interested in the doctors' evaluation of the plaintiff's medical condition, "not their opinions of the legal consequences of his [or her] condition." 125 F.3d. at 1440. The ALJ correctly applied the law when he discredited Dr. Brock's conclusory opinion regarding plaintiff's disability. (*See* Tr. at 30.)

In addition, the regulations state that all medical opinions will be evaluated under a rubric consisting of several factors, including consistency. "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. § 416.927(d)(4). In this case, Dr. Brock's opinion of

disability, written after the plaintiff informed him of her claim, is not consistent with the record as a whole.  (Tr. at 30-31.)

In October of 2006, five months after her hospitalization, but before Dr. Brock opined that she was disabled, the doctor wrote in his notes that he believed Ms. Mooney was fine, "cardiac-wise," and that her chest pain "is not cardiac."  (Tr. at 300.)  On the date that he wrote the opinion about Ms. Mooney being disabled, Dr. Brock noted that her "resting EKG looks okay," and she had a regular rate and rhythm.  (Tr. at 334-35.) Although the notes did mention that her lipid levels were "markedly abnormal," and "maybe" she was having more angina, there is little indication as to the basis of Dr. Brock's disability opinion, and plenty of evidence by which one could form a contrary one.  (*Id.*)  In addition, Ms. Mooney had a ventriculogram on July 1, 2008, performed by Dr. Jerry Chandler, an associate of Dr. Brock, which found that her cardiac disease was "noncritical," and she was "generally well revascularized from her right coronary artery stent."  (Tr. at 622.) The record shows, therefore, that substantial evidence existed for the ALJ to conclude that Dr. Brock's opinion of disability was not consistent with her full medical record. (Tr. at 30.)  Accordingly, the ALJ had "good cause" to discredit Dr. Brock's opinion. *See Phillips,* 357 F.3d at 1241.

B.      Weight of the Medical Expert's Opinion

Plaintiff also contends that the ALJ erred in placing great weight on the opinion of the medical expert, Dr. James Anderson.  (Doc. 7 at 8.)  Dr. Anderson stated that he did not agree with Dr. Brock's conclusion of disability "from a cardiac standpoint." (Tr. at 30.)  Before addressing the issue of the weight placed on the opinion, the Court notes that Dr. Anderson's opinion was not the only source of evidence for the ALJ's decision.  (*See* Tr. at 30, 622.)  The ALJ also mentions the conclusion of Dr. Chandler in July 2008, indicating Plaintiff's cardiac condition is stable.  (*Id.*)  Plaintiff argues that July 2008 is outside a year "threshold period" of disability beginning with the hospitalization in 2006. (Doc. 7 at 5-7.) This twelve month period is significant because an impairment must have lasted or be expected to last at least that long to meet the statutory definition of disability. 20 C.F.R. § 416.905(a); (*See* Tr. at 24.)  Plaintiff's argument, however, ignores Dr. Brock's October 2006 opinion that Ms. Mooney was "fine" and her chest pain was "not cardiac." (Tr. at 300.)  There is no evidence of a twelve month period during which even Dr. Brock felt Ms. Mooney was disabled from a cardiac standpoint.

Although the ALJ could have made the same decision based on other evidence, he did not err in giving weight to the opinion of Dr. Anderson.  While the ALJ should

place more weight on an examining physician than one who has not examined the patient, 20 C.F.R. 416.927(d)(1); *see also Broughton v. Heckler*, 776 F.2d 960 (11th Circuit, 1985), this does not mean that a reviewing physician's opinion cannot be given considerable weight; rather the opinions of non-examining sources are subject to evaluation under the same factors as those used for treating physicians. 20 C.F.R. 416.927(f). Among these factors, consistency with the record supports the ALJ's decision to give greater weight to the opinion of Dr. Anderson than to that of Dr. Brock. 20. C.F.R. 416.927(d)(3)–(4). Another important factor is the longitudinal nature of a doctor's access to the patient or the records. 20 C.F.R. 416.927(d)(2)(i). Although the regulations frame this factor in terms of length of treatment, it applies to the opinions of non-examining medical experts as well. 20 C.F.R. 416.927(f). Dr. Anderson, as the only physician to examine the entire medical evidence of record in the file (Tr. at 32), was properly given more weight by the ALJ. 20 C.F.R. 416.927(d)(2)(i). The ALJ also noted that Dr. Anderson "has knowledge of the SSA program" (Tr. at 31-32), and the regulations do state that "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has" should be considered favorably as the ALJ determines the weight to place on a given medical opinion. 20 C.F.R. 416.927(d)(6). On the

whole, the record shows that there is substantial evidence supporting the ALJ's decision to give greater weight to the opinion of Dr. Anderson.

Although Plaintiff focuses primarily on her cardiac condition as the source of potential disability, the same issues discussed above arise in terms of Plaintiff's mental health. (*See* Tr. at 31.) One examining psychologist, Dr. Davis, opined that, although Plaintiff's disabilities are primarily physical, the combination of medical plus emotional distress would greatly limit her ability to work. (Tr. at 313-314.) This is an opinion on a subject reserved for the Commissioner, just like Dr. Brock's opinion that claimant is disabled.  20 C.F.R. § 416.927(e)(1).  Therefore, the ALJ properly disregarded this opinion.

The ALJ concluded that the combination of Plaintiff's physical and mental difficulties would still allow her to perform the above-mentioned residual functional capacity (RFC). (Tr. At 31.)  In order to make this finding, the ALJ relied partially on evidence provided by the Plaintiff herself.  For example, at the hearing she focused primarily on physical reasons she could not work rather than on mental or emotional limitations.  (*Id.*)  In addition, the ALJ found that Plaintiff has mild difficulties with both daily activities and social functioning, finding that she drives, prepares meals, and shops, as well as going out four times a week and talking to friends or relatives daily.

(Tr. at 28.)  The ALJ also examined the record on Plaintiff's potential problems with concentration, persistence, and pace, and determined that she has "at most moderate difficulties." (*Id.*)  He found that Plaintiff can pay attention to television and radio and remember what she has seen and heard, as well as being capable of reading and remembering what she has read.  (*Id.*)  The ALJ accounted for Plaintiff's difficulty completing tasks by including in her RFC that she is capable of "non-complex routine job tasks that do not require production quotas." (Tr. at 29.)  Finally, the ALJ also noted that Plaintiff has not experienced any episodes of decompensation or suicidal ideation.  (Tr. at 28.)

The ALJ was tasked with properly balancing this evidence and examining the whole record.  There was substantial evidence on which to base his conclusion that Plaintiff was not disabled from a mental health standpoint.  (Tr. at 27-32.) Plaintiff's contention that Dr. Anderson's opinion was given too much weight in this determination because he is not a mental health expert (Doc. 7 at 8) is rendered irrelevant by the amount of other evidence considered by the ALJ.

IV.   Conclusion
Upon review of the administrative record, and considering all of Ms. Mooney's arguments, the Court finds the Commissioner's decision is supported

by substantial evidence and in accord with the applicable law.  A separate order will

be entered.

Done this $\underline{4^{th}}$ day of $\underline{November\ 2011}$.

L. SCOTT COOGLER

UNITED STATES DISTRICT JUDGE

167458